UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **BGH Edelstahl Siegen GmbH**       **Plaintiff,**   v. **United States**       **Defendant.** | **Ct. No. 26-01186** |

**COMPLAINT**

On behalf of BGH Edelstahl Siegen GmbH ("BGH"), we hereby bring this civil action and allege the following:

**Parties**

1.  BGH is a foreign manufacturer and exporter of forged steel fluid end blocks ("FEBs") located in Siegen, Germany, and was a respondent in the third antidumping administrative review of FEBs from Germany for the period January 1, 2023 to December 31, 2023.

2.  Defendant is the United States of America, acting by and through the United States Department of Commerce ("Commerce").

**Jurisdiction**

3.  This action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (2)(B)(iii) to contest Commerce's final results of the administrative review under 19 U.S.C. §1675. *See* Forged Steel Fluid End Blocks from Germany: Final Results of the Antidumping Duty Administrative Review; 2023, 91 Fed. Reg. 3433 (Jan. 27, 2026) ("Final Results"); *incorporating* Issues and Decision Memorandum (Jan. 20, 2026) ("Final IDM").  Accordingly, this Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

1

**Standing**

4.   Plaintiff is a foreign manufacturer and exporter of fluid end blocks and participated in the review resulting in the contested determination.  Accordingly, plaintiff is an interested party that participated in the underlying administrative proceedings within the meaning of 19 U.S.C. § 1516a(d) & (f)(3) and 1677(9)(A).

5.   In addition, because Commerce's Final Results overstated plaintiff's antidumping duty margin, plaintiff has been adversely affected and aggrieved by agency action within the meaning of 5 U.S.C. § 702.  Therefore, plaintiff has standing to bring this action under 28 U.S.C. § 2631(c).

**Timeliness**

6.   Notice of the Final Results was published in the *Federal Register* on January 27, 2026.  Plaintiff filed a summons instituting this action within 30 days thereafter on February 25, 2026.  Plaintiff served notice of the action upon all other participants in the review on the same date.  Plaintiff is filing this complaint within thirty days after filing the aforementioned summons.  Plaintiff has thus commenced this action within the time limits specified in 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c) and Rules 3 & 6 of the Rules of this Court.

**Facts**

7.   On March 5, 2024, Commerce initiated the third antidumping administrative review of FEBs from Germany for the period January 1, 2023 to December 31, 2023.  Initiation of Antidumping and Countervailing Duty Administrative Reviews, 89 Fed. Reg. 15827 (March 5, 2024) (Initiation Notice).  BGH was named as a respondent.

8.   BGH provided full, accurate and timely responses to all of Commerce's requests for

information.

9. On May 14, 2025, Commerce published notice of its preliminary results in the *Federal Register*. Forged Steel Fluid End Blocks from Germany: Preliminary Results of Antidumping Duty Administrative Review 2023, 90 Fed. Reg. 20451 (May. 14, 2025). In these preliminary results, Commerce determined an estimated weighted-average dumping margin for BGH of 8.90%.

10. On June 4, 2025, BGH submitted a case brief to Commerce and, on June 11, 2025, petitioners submitted a rebuttal brief.

11. On August 26, 2025, Commerce issued a Post-Preliminary Analysis memorandum. Post-Preliminary Analysis for Administrative Review of Fluid End Blocks from Germany; 2023, (Aug. 26, 2025) (Barcode: 4816531). In this analysis, Commerce suddenly altered the differential pricing analysis used in this administrative review and all prior segments of the proceeding and increased the estimated weighted-average dumping margin to 11.92%.

12. On September 10, 2025, BGH submitted comments on the Post-Preliminary Analysis to Commerce. Petitioners did not submit comments on the Post-Preliminary Analysis to Commerce.

13. On January 27, 2026, Commerce published notice of its final results in the *Federal Register*. Final Results, 91 Fed. Reg. 3433. In the Final Results, Commerce continued to determine a weighted-average dumping margin for BGH of 11.92%.

## **COUNT I**

14. The allegations of paragraphs 1 through 13 are restated and incorporated herein by reference.

15. Commerce's determination that forged steel bars and forged steel blocks produced

according to specific customer drawings for non-FEB products should be included within the definition of "foreign like product" under 19 U.S.C. § 1677(16)(A) and used in the calculation of normal value under 19 U.S.C. § 1677b is not supported by substantial evidence on the administrative record and is otherwise not in accordance with law.

16. Section 1677(16)(A) incorporates the definition of "subject merchandise" from 19 U.S.C. § 1677(25), which states that "subject merchandise" means the class or kind of merchandise that is within the scope of an investigation or review.

17. The products within the scope of this review are explicitly defined as forged steel fluid end blocks whether in finished or unfinished form. Finished fluid end blocks ("FEBs") are clearly defined as parts of hydraulic fluid power pumps under U.S. Harmonized Tariff Schedule (HTSUS No. 8413.91.9055).

18. An "unfinished" fluid end block is defined in reference to a finished fluid end block. As expressly stated in the petition documents, an "unfinished" fluid end block is a forged steel block "suitable for incorporation into the fluid end assembly of a hydraulic pump" after further finishing operations. Amendment of Petitions and Response to Commerce's Supplemental Questions, 4-5 (Dec. 30, 2019) (Barcode: 3924877-01 (A-428-847 INV)) ("First Amended AD/CVD Petitions"). Such unfinished FEBs are "dedicated for eventual use in the fluid end assembly of a hydraulic pump." Id. at 6. The first amended petition further explained that "there are no separate markets or functions for unfinished FEBs as distinct from finished FEBs - *i.e.*, they are all sold to pump manufacturers." Id.

19. During the original investigation at the Staff Conference held by the U.S. International Trade Commission ("ITC") on January 9, 2020, representatives of the U.S. domestic industry unequivocally testified that unfinished fluid end blocks are an intermediate

4

product dedicated exclusively to the production of finished FEBs.

20. The ITC relied upon this testimony in its injury determination to find that "unfinished FEBs are an intermediate product dedicated exclusively to the production of finished FEBs, with no other uses" and that "{t}here is no separate market for unfinished FEBs." Fluid End Blocks from China, Germany, India, and Italy, Inv. Nos. 701-TA-632-635 and 731-TA-1466-1468 (Preliminary), USITC Pub. 5017, 11 (Feb. 2020); see also Fluid End Blocks from China, Germany, India, and Italy, Inv. Nos. 701-TA-632-635 and 731-TA-1466 and 731-TA-1468 (Final), USITC Pub. 5152, 11-12 (Jan. 2021).

21. Pursuant to this finding, the ITC based its injury determination on a single domestic like product for finished and unfinished FEBs, which the ITC clearly stated were "dedicated exclusively to the production of finished FEBs."  Thus, the ITC made no injury determination as to unfinished forged blocks or bars that were not "dedicated exclusively to the production of finished FEBs."

22. Because the extent of the ITC's injury determination was expressly limited to finished FEBs and unfinished FEBs "dedicated exclusively to the production of finished FEBs," Commerce may not lawfully expand this scope to include unfinished forged products not exclusively dedicated to the production of finished FEBs since this would bring in products not covered by the ITC's injury determination.  As this Court explained in Wheatland Tube, a "fundamental requirement of both U.S. and international law is that an antidumping duty order must be supported by an ITC determination of material injury covering the merchandise in question." Wheatland Tube Co. v. United States, 973 F. Supp. 149, 158 (CIT 1997) (citing 19 U.S.C. § 1673 (1994)).

23. Commerce's scope decision in the original investigation was also explicitly based

upon petitioners' testimony at the ITC Staff Conference.  Commerce specifically explained that "{d}uring the International Trade Commission hearing, the petitioners stated that no opportunity exists to use forged blocks, which meet the 'chemistries and configurations' of fluid end blocks, for another purpose" than the production of finished fluid end blocks.  Scope Comments Decision Memorandum for the Preliminary Determinations, 6 (May 18, 2020) (Barcode:3975461-01 (A-428-847 INV - Investigation)); *see also* Scope Comments Decision Memorandum for the Final Determinations, 5-6 (Dec. 7, 2020) (Barcode:4064524-01 (A-428-847 INV – Investigation)).

24. Commerce's treatment of forged steel bars and forged steel blocks produced according to specific customer drawings for non-FEB products as "foreign like products" under 19 U.S.C. § 1677(16)(A) greatly expands the scope of this proceeding far beyond the narrowly defined scope upon which the ITC based its injury determination.  Rather than having the definition of finished FEBs govern the definition of unfinished FEBs as is the clear import of the scope language and petitioners' descriptions of the merchandise contained in the petition documents and their sworn statements before the ITC, Commerce essentially flips the scope language and completely uncouples the concept of unfinished FEBs from the clear definition of finished FEBs.  Under Commerce's interpretation, the scope is widely expanded to all forged steel products regardless of any connection to fluid end blocks in violation of the principle expressed in *Wheatland Tube* and 19 U.S.C. § 1673.

## COUNT II

25. The allegations of paragraphs 1 through 24 are restated and incorporated herein by reference.

26. To the extent that Commerce's determination is based upon a finding that the scope

6

of this review includes all forged steel bars and forged steel blocks regardless of production method, use or design, that finding is not supported by substantial evidence on the administrative record and is otherwise not in accordance with law.

27. The scope of this review nowhere mentions forged bar and mentions forged blocks only in reference to "fluid end blocks." For example, the products covered are expressly described as "Cut-to-length fluid end blocks." Nowhere are forged blocks mentioned without the limiting description "fluid end" blocks.

28. The petition documents and sworn testimony of petitioners also state that unfinished FEBs are "dedicated for eventual use in the fluid end assembly of a hydraulic pump" and that "there are no separate markets or functions for unfinished FEBs as distinct from finished FEBs." This information was used by both Commerce and the ITC in determining that unfinished FEBs are an intermediate product dedicated exclusively to the production of finished FEBs. Accordingly, the sources under 19 C.F.R. § 351.225(k)(1) confirm that the scope is limited to finished fluid end blocks and unfinished fluid end blocks "dedicated exclusively to the production of finished FEBs."

29. The sources under 19 C.F.R. § 351.225(k)(2), such as physical characteristics, the expectations of the ultimate users, the ultimate use of the product, the channels of trade in which the product is sold and the manner in which the product is advertised and displayed, also support the distinction between fluid end blocks and other forged blocks and bars.

## COUNT III

30. The allegations of paragraphs 1 through 29 are restated and incorporated herein by reference.

31. Commerce's matching of home market sales of forged blocks made according to

specific customer drawings and specifications for the manufacture of military equipment and machines to produce plastics is not supported by substantial evidence on the administrative record and otherwise not in accordance with law.

32. None of these products for military use and the manufacture of machines to produce plastics have any connection to fluid end blocks and therefore should have been excluded from the home market sales database when calculating the antidumping duty margin on BGH's U.S. sales of forged steel fluid end blocks or, at minimum, been treated as a separate product, and not included in Commerce's margin calculations (including the calculation of constructed value or CV profit).

33. These products made according to specific customer drawings and specifications for military equipment and plastic production machinery do not meet the scope definition of fluid end blocks and do not qualify as "foreign like product" under 19 U.S.C. § 1677(16)(A).  The production, design and application of a product should also be considered in making a "fair comparison" between the export price or constructed export price and normal value under 19 U.S.C. § 1677b(a).

## **COUNT IV**

34. The allegations of paragraphs 1 through 33 are restated and incorporated herein by reference.

35. Commerce suddenly altered the differential pricing analysis applied in this administrative review and all prior segments of the proceeding more than three months after issuance of the preliminary results and more than two months after the close of briefing.  This sudden change in the differential pricing analysis resulted in a three percentage-point increase in BGH's weighted-average dumping margin.

8

36. With respect to this sudden change in methodology, Commerce failed to provide BGH with adequate opportunity to be heard "at a meaningful time and in a meaningful manner" as required by due process. The comment period provided by Commerce was far less than the 21 days that parties would have had to brief the issue had the methodological change been noted in the preliminary results. This period was fully inadequate to brief the complicated legal issues concerning Commerce's differential pricing analysis and fully analyze the calculations in the over 250 pages of programs and printouts disclosed with Commerce's Post-Preliminary Analysis.

37. Commerce improperly applied its revised differential pricing analysis in a general manner to this proceeding without proper consideration of the facts of this proceeding and proper modification. Commerce's revised differential pricing analysis and the resulting increase in BGH's weighted-average dumping margin are not supported by substantial evidence on the administrative record of this proceeding.

38. Commerce's revised differential pricing analysis continues to suffer from the same lack of statistical analysis and significance as found by the U.S. Court of Appeals for the Federal Circuit in Marmen Inc. v. United States, 134 F.4th 1334 (Fed. Cir. 2025). Indeed, in abandoning all statistical criteria and simply applying irrebuttable thresholds, Commerce has made its analysis less precise and incapable of determining any pattern of significant price differences as required by statute.

39. Commerce's revised differential pricing analysis is contrary to law and fails to fulfill the requirements of 19 U.S.C. § 1677f-1(d)(1)(B).

## Prayer for Relief

**WHEREFORE**, plaintiff respectfully requests that the court enter judgment in its favor

and against the defendant by:

(1) declaring Commerce's final results as not supported by substantial evidence on the administrative record and otherwise not in accordance with law or other applicable legal standard as stated above;

(2) remanding this matter to Commerce for disposition consistent with the final opinion and order of the Court; and

(3) granting plaintiff such other and further relief as the Court may deem appropriate.

<div style="margin-left: 50%;">

Respectfully submitted,

/s/ *Marc E. Montalbine*
Marc E. Montalbine*
J Kevin Horgan
Merisa A. Horgan
**DEKIEFFER & HORGAN, PLLC**
1015 Fifteenth St., N.W.
6th Floor
Washington, D.C. 20005
Tel: (202) 783-6900
email: montalbine@dhlaw.com

</div>

Date: March 27, 2026                                    Counsel for Plaintiff

_____

* Admitted to Virginia Bar; practice limited to Federal International Trade Matters pursuant to D.C. Bar Rule 49(c)(2).